UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEEDA PARTS MANUFACTURING,
INC., *et al.*,

    Plaintiffs,

v.

PSNET, INC., *et al.*,

    Defendants.
_____/

Case No. 07-15410

Hon. John Corbett O'Meara

## **OPINION AND ORDER**

Before the court are three motions for summary judgment, which have been fully briefed: Plaintiffs' motion for partial summary judgment; Defendants PSNet, Inc., PSNet Communications, Inc., and Saygus Inc.'s motion for summary judgment; and Defendant Chad Sayers's motion for summary judgment. The court heard oral argument on May 28, 2009, and took the matter under advisement.

## **BACKGROUND FACTS**

Plaintiffs are Needa Parts Manufacturing, Inc., and its owners, James Koleszar and Giulio Cogo. Defendants are PSNet, Inc.; its principal, Chad Sayers; and alleged alter ego companies Saygus, Inc., and PSNet Communications. This action involves a stock purchase deal gone sour.

Needa Parts is an automotive aftermarket parts manufacturer based in Flint, Michigan. The company was founded in 2000 by Koleszar and Cogo. In 2004, Cogo introduced Koleszar to Bill Brannan, a certified financial advisor who began doing some accounting work for Needa.

In 2005, Needa began looking for investors. Brannan told Koleszar that he could assist Needa in this regard. Brannan entered into an agreement with Needa, pursuant to which Brannan would receive a 5% finder's fee on the funding he secured for the company.

In late 2006, Brannan contacted Chad Sayers, CEO of PSNet, to propose that PSNet invest in Needa Parts. PSNet submitted a proposed term sheet to Needa in November 2006. The term sheet called for an investment of "$10,000,000 for 70% of the equity in the company plus infusion of additional funding as needed to support growth." Pl.'s Ex. 3. Needa agreed to these terms and its attorney, Peter Long, began drafting the stock purchase agreement. Needa intended to close the deal on December 15, 2006.

Needa contends that PSNet conducted due diligence in December 2006 and that no issues were raised. According to Needa, PSNet nonetheless delayed for several months in closing the transaction. In the meantime, PSNet continued to reaffirm its commitment to the deal, but made frequent excuses as to why its funds were "tied up." (For example, PSNet claimed that the Department of Homeland Security had frozen "several accounts in excess of $38 million" and that $3 million was tied up in a bond securing another project.)

Needa contends that the stock purchase agreement was finally executed in June 2007 by Koleszar and Cogo on behalf of Needa, and Sayers on behalf of PSNet. Sayers, however, testified that he never signed the agreement. His signature is in the form of an electronic stamp, which he claims was affixed to the contract by Brannan without his authorization. (Brannan, Defendants point out, stood to make $500,000 as a finder's fee on the deal.)

PSNet never paid the purchase price set forth in the stock purchase agreement. According to Needa, PSNet continued to promise payment, but failed to follow through. By

September 2007, PSNet had still not paid the purchase price. Around this time, Koleszar contends that Sayers stopped responding to his calls and emails. Attorney Long sent PSNet a demand letter on September 4, 2007. PSNet's representative, Neil Crabtree, responded that PSNet did not have the money. Unable to resolve the issue, Plaintiffs filed suit in state court on November 13, 2007; Defendants removed the case to this court on December 19, 2007.

Plaintiffs assert claims of breach of contract, fraud, innocent misrepresentation, and tortious interference with business relationships against Defendants. Defendants responded with counterclaims of tortious interference, fraud, and breach of contract against Needa. PSNet has withdrawn its tortious interference and breach of contract claims, leaving only the fraud claim.

Plaintiffs seek partial summary judgment on their breach of contract claim as well as on PSNet's fraud claim. Plaintiffs also seek a ruling that PSNet Communications is the alter ego of PSNet. For their part, the company Defendants and Sayers seek summary judgment on all of Plaintiffs' claims.

## **LAW AND ANALYSIS**

**I.      Standard of Review**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 252 (1986).

## II.     Plaintiffs' Motion for Summary Judgment

### A.     Plaintiffs' Breach of Contract Claim

Plaintiffs contend that Defendants breached the stock purchase agreement by failing to pay the purchase price. Plaintiffs seek summary judgment in their favor. PSNet and Sayers contend that (1) Sayers never signed the agreement; and (2) the agreement was contingent on PSNet obtaining funding.

Plaintiffs convincingly argue that Sayers's testimony that he did not sign the agreement is not credible. For example, Plaintiffs point out that Sayers never disputed that he signed the agreement until after this litigation was filed. However, Sayers's credibility is for the trier of fact, not the court, to assess. A jury could believe that Brannan put Sayers's electronic signature stamp on the agreement without Sayers's authorization. Under those circumstances, there would be no mutual assent and no contract between the parties. Accordingly, whether a contract exists is a matter for the jury to decide and Plaintiffs' motion will be denied on this point.

### B.     Plaintiffs' Alter Ego Claim

Plaintiffs claim that PSNet, Inc. and PSNet Communications are alter egos. (Sayers testified that Defendant Saygus, Inc. and PSNet Communications are the same company.) Under Michigan law, "where [a] corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored." Porta-John of America v. United States, 4 F. Supp. 2d 688, 700 (E.D. Mich. 1998) (citation omitted). The corporate veil "may be pierced only when an otherwise separate corporate existence has been used to subvert

justice or cause a result that is contrary to some overriding public policy." Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 475 F.3d 783, 798 (6th Cir. 2007) (quoting Seasword v. Hilti, 449 Mich. 542, 537 N.W.2d 221, 224 (1995)). "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." Id. (citation omitted). "The propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be intensely fact-driven." Id.

PSNet Communications is a company that is developing a video cell phone. PSNet was formed in 2006 for the purpose of acquiring other businesses that might, if successful, provide capital for PSNet Communications. Sayers is the only shareholder and officer of PSNet, which does not have a board of directors. Sayers is also the CEO and principal of PSNet Communications. According to Plaintiffs, PSNet never had any capital, revenue, insurance, employees, and, apart from one failed real estate deal, never did any business. Plaintiffs contend that PSNet existed only as a shell company.

There are no allegations, however, regarding the intermingling of funds or that the corporate form of PSNet was not respected by PSNet Communications. There are no allegations, for example, that PSNet "loaned" PSNet Communications money that was not repaid, that PSNet Communications treated PSNet's money as its own, that PSNet was operated solely for the financial benefit of PSNet Communications, or that PSNet was formed in order to avoid the legal obligations of PSNet Communications. Cf. Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc., 872 F.2d 702 (6th Cir. 1988) (piercing corporate veil where individual defendant "loaned" money to the corporation with no formal agreements and paid

-5-

corporate expenses out of his pocket, the corporation paid the individual's personal expenses, the individual withdrew money from the corporation and left creditors unpaid, and financial records were inadequate); Grass Lake All Seasons Resort v. United States, 2005 WL 2095890 (E.D. Mich. Aug. 29, 2005) (Borman, J.) (piercing corporate veil where alter ego "looted" corporation for personal use, did not have his own bank account or property in his own name, and used the company to avoid paying taxes for over ten years). While it may be true that PSNet was an undercapitalized start-up company, it does not follow that the court must rule as a matter of law that PSNet is a mere alter ego of PSNet Communications. On this record, this "intensely fact-driven" inquiry cannot be determined on summary judgment.

### C. PSNet's Fraud Claim

In the counterclaim, PSNet asserts a claim of fraud against Needa. The claim is based upon two alleged misrepresentations: (1) Needa failed to disclose its contract with Bill Brannan; and (2) Needa failed to disclose its relationship with another potential investor, Shintoc. Plaintiffs seek summary judgment on these claims.

In response to Plaintiffs' motion, PSNet attempts to change the basis for the fraud claim, alleging only that Koleszar misrepresented Needa's need for operating funds. See Defs.' Resp. at 14-16. This alleged fraud was not pleaded in PSNet's counterclaim. See Counterclaim at ¶¶ 36-47. Federal Rule of Civil Procedure 9(b) requires fraud to be pleaded with particularity. See Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir. 1999) (noting that Rule 9(b) requires a plaintiff "at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud"). Having failed to

plead fraud with particularity at the outset, PSNet cannot attempt to amend its pleadings in response to Needa's motion for summary judgment.  See Wachovia Securities LLC v. Neuhauser, 528 F. Supp. 2d 834, 849 (N.D. Ill. 2007).

Because PSNet has not provided evidence supporting its properly pleaded fraud claim, and has not properly pleaded its current fraud claim, the court will grant summary judgment in Needa's favor on this issue.

### III.     Company Defendants' Motion for Summary Judgment

#### A.     Breach of Contract

Defendants seek summary judgment on Plaintiffs' breach of contract claim because they allege that Sayers never signed the contract.  As discussed above, whether Sayers signed the agreement is a matter for the jury to decide.  The court will deny Defendants' motion on this point.

#### B.     Fraud/Innocent Misrepresentation

Defendants also seek summary judgment on Plaintiffs' fraud claims.  The elements of fraud are: (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew it was false or made it recklessly, without knowledge of its truth or falsity; (4) defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered damages. Derderian v. Genesys Health Care Sys., 263 Mich. App. 364, 689 N.W.2d 145, 155-156 (2004).

> Generally, a claim of fraud cannot be based on a promise of future conduct. An exception to this rule exists, however, if a promise is made in bad faith without the intention to perform it. "[E]vidence of fraudulent intent, to come within the exception, must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter.'"  Plaintiffs,

> therefore, must demonstrate that at the time defendants made
> promises to them, defendants did not intend to fulfill the promises.

Id. at 156.

Most of the representations that Plaintiffs claim are fraudulent are PSNet's promises to pay money to Needa. See Compl. at ¶ 65. In general, such unfulfilled promises are not the basis for a fraud claim, but rather, for breach of contract. Plaintiffs assert, however, that the "bad faith" exception to this rule applies here, because PSNet promised to pay but had no intention of performing. Plaintiffs base this argument on the fact that PSNet had no money at the time and never had any revenue.

Plaintiffs further argue that PSNet misrepresented that the Department of Homeland Security had frozen its assets in the amount of $38 million; that Homeland Security had not released $10 million; and that the $3 million due at closing was tied up in a bond. Although Defendants argue that these statements were true, Plaintiffs contend that the evidence demonstrates that they are not. Pl.'s Resp. at 14-16. For example, Plaintiffs have provided an affidavit from a city engineer stating that PSNet did not put up a $3 million cash bond. See Pl.'s Ex. 7 (Affidavit of Bart Mumford).

In light of the disputed facts alleged by Plaintiffs, Defendants have not satisfied their burden of demonstrating that no genuine issue of material fact exists with respect to Plaintiffs' fraud claim. The court will deny Defendants' motion for summary judgment on this issue.

### C.     Tortious Interference

Defendants also seeks summary judgment on Plaintiffs' tortious interference claim. The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy; (2) defendants' knowledge of the relationship or

expectancy; (3) an intentional and improper interference, inducing or causing a breach or termination of a contract or business relationship or expectancy; and (4) damages. Mino v. Clio Sch. Dist., 255 Mich. App. 60, 78, 661 N.W.2d 586 (2003).

Plaintiffs contend that PSNet wrongfully interfered with its relationships with its customers and suppliers by promising to pay money, but failing to do so. Needa claims that it relied on PSNet's promises and when the money was not forthcoming "it would cause Needa problems with its suppliers." Needa's allegations are entirely too vague and conclusory to survive summary judgment. Needa does not specifically identify one business relationship or expectancy with which PSNet improperly interfered. Accordingly, the court will grant Defendants' motion and dismiss Needa's tortious interference claim.

**III.     Chad Sayers's Motion for Summary Judgment**

    **A.     Personal Jurisdiction**

Defendant Chad Sayers moves for summary judgment on several issues. First, Sayers argues that the court lacks personal jurisdiction over him because he has had no contacts with Michigan. In a diversity action, there is a two-part test for determining whether the court may exercise personal jurisdiction over a non-resident defendant. First, the court must determine whether jurisdiction is authorized under the forum state's long-arm statute. See Air Prod. & Controls, Inc. v. Safetech Int'l Inc., 503 F.3d 544, 550 (6th Cir. 2007). If the answer to that question is yes, then the court must determine whether the exercise of jurisdiction comports with constitutional due process. Id. Because Michigan's long-arm statute extends to the limits of due process, these two inquiries merge into one. Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992). Three criteria must be met to satisfy

due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1299 (6th Cir. 1989) (citing Southern Machine Co. v. Mohasco Indus. Inc., 401 F.2d 374 (6th Cir. 1968)).

Sayers alleges that he did not purposefully avail himself of the privilege of acting in Michigan, but only responded to Needa's phone calls and emails. Needa contends that Sayers sent two fraudulent letters to Plaintiffs in Michigan and made fraudulent statements over the phone.

> The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action. . . . When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute "purposeful availment."

Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001) (exercising personal jurisdiction over resident of Belgium).

As in Neal, it is Sayers's communications with forum residents that give rise to this action for an intentional tort – fraud. Thus, these contacts are sufficient to meet the purposeful availment prong, as well as the requirement that the cause of action must arise from Sayers's activities here – his allegedly fraudulent communications. Further, Sayers's contacts are substantial enough to make the exercise of jurisdiction over him reasonable. He engaged in

business dealings over a period of several months with Michigan defendants. By directing fraudulent representations to a Michigan company, he could reasonably have anticipated "being haled into court" in Michigan. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir. 1991) (if the first two Mohasco criteria are met, "only the unusual case will not meet this third criterion"). Moreover, defending this action in Michigan does not present an undue burden for Sayers; he will need to appear on behalf of PSNet at trial in any event. Accordingly, the court will deny Sayers's motion to dismiss for lack of personal jurisdiction.

        **B.**      **Breach of Contract**

Sayers seeks summary judgment on Needa's breach of contract claim. It does not appear that Needa is asserting a breach of contract claim against Sayers individually. To the extent Needa is asserting such a claim, it is clear that there is no contract between Needa and Sayers in his individual capacity. Accordingly, to the extent Needa is asserting a breach of contract claim against Sayers, it is dismissed.

        **C.**      **Fraud**

Sayers alleges that Needa's fraud claim cannot be sustained as a matter of law. For the same reasons stated above, Needa's fraud claim will be determined by the trier of fact. Sayers further argues that he should not be personally liable for fraud, since he was not acting as an individual, but as an officer of PSNet. However, "[i]t is a familiar principle that the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort." Elezovik v. Bennett, 274 Mich. App. 1, 14, 731 N.W.2d 452 (2007). Accordingly, Sayers's

motion on this point is denied.

### D. **Tortious Interference**

Sayers also seeks summary judgment on Needa's tortious interference claim. The court will grant this request for the reasons explained above in the analysis of the company Defendants' motion.

### **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' March 30, 2009 motion for partial summary judgment, Defendants' March 30, 2009 motion for summary judgment, and Chad Sayers's March 30, 2009 motion for summary judgment are GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

Defendants' counterclaim is DISMISSED WITH PREJUDICE.

SO ORDERED.

                                            s/John Corbett O'Meara
                                            United States District Judge

Date: June 2, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 2, 2009, by electronic and/or ordinary mail.

                                            s/William Barkholz
                                            Case Manager